# EXHIBIT 3 TO NOTICE OF REMOVAL

Travis County Docket Sheet, along with all other process, pleadings, returns, and orders on file in the State Action

345th District Court

## Case Summary

### Case No. D-1-GN-23-000255

| | | |
|---|---|---|
| **MARLENE MALEK VS. RICHARD MINICOZZI,WILLIAM MURDY,TIMOTHY TYSON** | § <br> § <br> § | Location: **345th District Court** <br> Judicial Officer: **345TH, DISTRICT COURT** <br> Filed on: **01/13/2023** |

---

### Case Information

Case Type:  Other Civil
Case Status:  **01/13/2023  Open**

---

### Assignment Information

**Current Case Assignment**
Case Number      D-1-GN-23-000255
Court                  345th District Court
Date Assigned    01/13/2023
Judicial Officer   345TH, DISTRICT COURT

---

### Party Information

**Defendant**   **MINICOZZI, RICHARD M.**

              **MURDY, WILLIAM**

              **TYSON, TIMOTHY**

---

### Case Events

01/13/2023        ORIGINAL PETITION/APPLICATION (OCA)
                  *PLAINTIFFS ORIGINAL PETITION*
                  Atty/Pro Se:   Attorney BITTING, DANIEL C.

1/13/2023 8:08 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-23-000255
Victoria Benavides

D-1-GN-23-000255

CAUSE NO. _____

| | |
|---|---|
| MARLENE A. MALEK AS CO-TRUSTEE OF THE FREDERIC V. MALEK GST NON-EXEMPT MARITAL TRUST, directly on behalf of the Trust and derivatively on behalf of HUDSON RIVER PARTNERS I L.P. and THAYER LEADER DEVELOPMENT GROUP, INC., | IN THE DISTRICT COURT OF |
| Plaintiff, | |
| v. | TRAVIS COUNTY, TEXAS |
| RICHARD M. MINICOZZI, WILLIAM MURDY, and TIMOTHY TYSON, | 345TH, DISTRICT COURT |
| Defendants. | _____JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff, Marlene A. Malek as co-trustee of the Frederic V. Malek GST Non-Exempt Marital Trust, on behalf of the trust and derivatively on behalf of and Hudson River Partners I L.P. and Thayer Leader Development Group, Inc., brings this suit against Defendants, Richard M. Minicozzi, William Murdy, and Timothy Tyson, and alleges the following on knowledge, information, and belief.

## DISCOVERY CONTROL PLAN AND RELIEF SOUGHT

1.      Discovery shall be conducted pursuant to a Level 3 Discovery Control Plan pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.  Plaintiff seeks monetary relief over $1,000,000.

**INTRODUCTION**

2.     This action arises from Defendant Richard "Slick Rick" Minicozzi's grievous and cynical abuse of positions of corporate power and control to enrich himself to the detriment of the companies and stockholders to whom he owes fiduciary duties.

3.     Minicozzi's misconduct tarnishes the legacy and service of the late Fred Malek—a West Point graduate, Vietnam veteran, and successful businessman who co-founded two companies (Hudson River Partners and Thayer Leader Development Group) intended to uplift the West Point community and further the values Malek learned in the storied United States Military Academy.

4.     Specifically, Minicozzi has abused his position to usurp corporate opportunities and resources from the companies Malek founded—and has even launched his own competing companies while continuing to control, mismanage, and plunder the companies Malek co-founded.

5.     Minicozzi's misconduct has been enabled by the collusive support of Defendants William Murdy and Timothy Tyson, who have unfortunately chosen to look the other way, apparently in exchange for personal benefits from Minicozzi, in violation of their fiduciary duties to the companies and stockholders they are charged with protecting.

2

6.     Plaintiff seeks to right these wrongs, to recover its losses and Defendants' ill-gotten gains, and to prevent Defendants from continuing to tarnish and pilfer from the two companies that they are currently wantonly harming.

## PARTIES

7.     Frederic V. Malek GST Non-Exempt Marital Trust ("Malek Trust") was created by the Frederic V. Malek Revocable Trust dated June 19, 1992, as amended by the March 2019 amended and restated Frederic V. Malek Revocable Trust under an agreement dated June 19, 1992. The co-trustees of the Malek Trust are Bank of America N.A. and Marlene A. Malek.

8.     Marlene A. Malek ("Mrs. Malek," Plaintiff, or "Trustee"), widow of Frederic V. Malek, resides in Virginia and appears in this lawsuit solely in her capacity as a co-trustee of the Malek Trust.

9.     Hudson River Partners I L.P. ("Hudson River Partners" or "HRP") is a Delaware limited partnership with its headquarters at 674 Thayer Road in West Point, New York.

10.     Thayer Leader Development Group, Inc. ("TLDG") is a Texas corporation with its principal place of business in West Point, New York.

11.     Richard M. Minicozzi ("Minicozzi") is an individual residing at 6008 Hood Hollow, Austin, Texas 78731.

12.    William Murdy ("Murdy") is an individual residing at 71 St. Johns Place, New Canaan, Connecticut 06840.

13.    Timothy Tyson ("Tyson") is an individual residing at 6 Point Road, Norwalk, Connecticut 06854.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction because the amounts in controversy exceed the minimum jurisdictional limits of this Court.

15.    Venue is proper pursuant to Texas Civil Practice and Remedies Code Section 15.002(a)(2) because Travis County is the county of Minicozzi's residence.

16.    Venue is also proper pursuant to Texas Civil Practice and Remedies Code Section 15.002(a)(3) because Travis County is the location of TLDG's principal office.

17.    Venue is also proper pursuant to Texas Civil Practice and Remedies Code Section 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claims occurred in Travis County.

18.    Pursuant to Texas Civil Practice and Remedies Code Section 17.042, this Court has personal jurisdiction over non-residents Murdy and Tyson because, as set forth below, they committed torts causing injury to TLDG, a Texas corporation. In addition, as Directors of TLDG, Murdy (who resided in Texas at the time of TLDG's founding) and Tyson have purposefully availed themselves of the

4

privilege and benefits of doing business in Texas and have significant and continuous contacts with Texas.

19.    In addition, this Court has personal jurisdiction over non-resident Hudson River Partners by written agreement of the partners in its Third Amended and Restated Limited Partnership Agreement.

**FACTS**

20.    Fred Malek, Sr. lived an exemplary life in service of his country. Born and raised in a working-class household in Chicago, Malek had the honor of attending the United States Military Academy at West Point. He thrived there, learning lessons of work ethic, grit, and service that he carried for the rest of his life. After graduating in 1959, he served in the Vietnam War as an Airborne Ranger assigned to a Special Forces unit. He then went on to a successful career in business and politics. He married and had two children. Malek passed away on March 24, 2019.

21.    Malek believed strongly that his time at West Point played an indispensable role in making him the man he became, and he strove to support the Academy to help pass these lessons to future generations of American leaders. In 2008, President George W. Bush appointed Malek to serve on West Point's Board of Visitors, where Malek ultimately served as Chairman. Malek also made generous financial contributions to West Point for decades, becoming the largest

philanthropist in West Point's history. West Point's Malek Visitors Center, Malek Tennis Center and Malek Soccer Stadium all bear the family name.

22.    In connection with his support of the Academy, Malek also became involved in the community in West Point, New York. Malek co-founded Hudson River Partners, which owned and operated the Thayer Hotel located on the West Point campus. He also co-founded TLDG, a private company consulting with outside organizations on the leadership skills taught at West Point. These organizations, in combination with Malek's contributions to the Academy, have been a powerful force uplifting West Point into the institution and community it is today.

23.    Malek deliberately positioned the Thayer Hotel and TLDG to carry on the legacies of his alma mater and his family. Unfortunately, since Malek's passing, Defendants have taken advantage of Malek's good name to line their own pockets.

24.    Minicozzi, Murdy, and Tyson are co-founders and board members of Hudson River Partners and TLDG. Together, they control both companies, enabling them to treat both companies as their personal piggy banks.

25.    Minicozzi nominally serves as TLDG's CEO and as Hudson River Partners' General Partner. Notwithstanding these titles, however, Minicozzi devotes virtually no time to managing the companies. Apart from the few hours he spends overseeing TLDG's and Hudson River Partners' controller and Quickbooks

accounting system, Minicozzi does not participate in any significant company events. Murdy and Tyson also devote minimal time (at most) to the companies.

26.    But these facts have not stopped Minicozzi from doubling his annual TLDG salary and bonus almost immediately after Malek's passing, notwithstanding his minimal work for the company. Nor have these facts stopped Minicozzi and Chairman Murdy from misappropriating for themselves as much as 73% of the companies' cash flow as "board fees," which Chairman Murdy referred to as a "Pre-Distribution Distribution"—including doubling their board fees shortly after Malek's passing. They continued taking significant funds during 2020 and 2021, when the companies were earning limited revenues and taking government assistance Payroll Protection Plan funds. On information and belief, there are no board minutes or approvals supporting these significant increases.

27.    Instead of monitoring the businesses for the benefit of the companies' interest holders, Minicozzi pays himself more than $1 million annually—while he spends his time managing his other, separately owned entities (including Minicozzi Properties, Inc.; Minicozzi Real Estate, Inc.; TSC Real Estate, Inc.; Capital Villa Apartments; Caltex Real Estate, Inc.; Lone Star Peak Performance, Ltd.; 41 Waller Lofts Condominium Association, Inc.; Reinli Arms Apartments; Thayer Gate Properties Inc.; Thayer Gate Real Estate Inc.; Academy Realty Group, Inc.; MC

Joint Venture Ltd.; HF Main Street Real Estate Inc.; Meat Eaters Inc.; ESR Development Inc.; Lack Real Estate Inc.; and 5322 HWY 261 Inc.).

28.    Minicozzi has also caused TLDG and Hudson River Partners to enter egregiously overpriced service contracts with his separately owned entities, while other of Minicozzi's entities directly compete *against* TLDG and Hudson River Partners.

29.    For example, Hudson River Partners owns the Thayer Hotel, which sits on the West Point campus. In 2019, Daniel Rice, TLDG's President and one of its board members and owners, brought an opportunity to TLDG to acquire a nearby vacant building, for an attractive price of $700,000. But instead of approving the purchase on TLDG's behalf, Minicozzi usurped the opportunity and bought the building for himself with the intent to rent it back to TLDG at an outrageous profit for himself and cost to TLDG.

30.    As if stealing the corporate opportunity were not egregious enough, Minicozzi then began raising money to renovate the building *as a new hotel*, that would be complete with amenities such as a spa and rooftop pool, *that would compete against* Hudson River Partners (the owner of the Thayer Hotel). TLDG received no benefit from this, despite the fact that its President had brought the opportunity to TLDG for *its* benefit. Instead, and to the contrary, Minicozzi stole the corporate opportunity and then added insult to injury by using it to plan a newer

product that will compete *against* HRP's Thayer Hotel. Minicozzi further schemed to use the TLDG business and the Thayer Hotel brand and sales team to fill his competing hotel (Thayer Resorts and Spa) to the detriment of the Thayer Hotel.

31.    Indeed, on information and belief, Minicozzi, Murdy, and Tyson have also represented to investors and financial institutions that TLDG would be an anchor tenant of Minicozzi's new project and, as an anchor, an annual consumer of rooms and amenities at the proposed new hotel. But TLDG is the anchor tenant of Hudson River Partners' Thayer Hotel. Such action would directly take business away from the Thayer Hotel to the detriment of Hudson River Partners, to whom Minicozzi owes his duties and allegiance.

32.    Minicozzi also caused Hudson River Partners to enter a contract with the management company *he* independently owns, Always There Property Management Service, Inc. ("Always There"), to manage the Thayer Hotel—even though Minicozzi's company has *no expertise in operating hotels* nor the personnel and infrastructure of any other basic hotel management company operating in the space. This contract, along with other agreements signed by Murdy, forces Hudson River Partners to pay significantly above-market rates for Minicozzi's company to grossly mismanage the Thayer Hotel to the detriment of Hudson River Partners. Minicozzi then further delegated the work of managing the Thayer Hotel to the hotel

staff members whom HRP is paying, leaving Always There to siphon cash as a shell company providing no value add for the excessive fees that it takes for itself.

33.     In just one example of his mismanagement of the Thayer Hotel, on or around September 26, 2020, Minicozzi was apprehended on hotel property for repeatedly serving alcohol to minors on the property. Minicozzi had invited his underage son and friends, male and female cadets, to stay at the hotel and drink to excess—necessitating police intervention. In addition to his own potential criminal liability, Minicozzi's actions placed the hotel's ability to sell liquor on federal property in jeopardy. But Minicozzi never informed investors of this incident despite its potentially dire consequences, choosing instead to try to sweep it under the rug. TLDG's Executive Director, Dr. Karen Kuhla, and its President, Daniel Rice, both requested that Murdy (as TLDG's Chairman) notify shareholders of TLDG and Thayer Hotel of the arrest and investigation, but consistent with his "Protect Rick" approach to corporate oversight, Murdy refused. Having secured Murdy's protection from inside the company, Minicozzi then sought to pay-off the hotel's General Manager not to talk about the events as well.

34.     When Plaintiff and Daniel Rice (each 19% owners of Hudson River Partners) learned of these events, they asked Minicozzi for a copy of the board's minutes—but were dismayed to learn that the board had none. Further investigation uncovered extensive failures of basic recordkeeping—no minutes, no corporate

records, no vote counts. Indeed, it is unclear whether Minicozzi even convened board meetings at all.

35.    The Trust confronted Minicozzi about this and other grievances, including that The Malek Trust should have stepped into Malek's board seat. In April 2022, Minicozzi surprisingly claimed that Malek had resigned from the board prior to his passing in 2019. In response to a demand for documentation supporting his surprising claim, Minicozzi provided a document on which Malek's signature had clearly been forged.

36.    Minicozzi usurped other opportunities from TLDG. TLDG's business is providing consulting services to companies, including Fortune 100 companies, to train their staff and executives on West Point leadership techniques. Minicozzi has founded a new company in Texas called Lone Star Peak Performance *that provides similar services for corporate executives*, competing directly against TLDG. The two companies are so similar that Minicozzi has hired TLDG employees to serve their exact same functions at both TLDG and Lone Star at the same time—directing business away from TLDG toward his own company, and then compounding his wrongdoing by paying employees using only TLDG funds.

37.    Minicozzi has mismanaged funds from both TLDG and Hudson River Partners. This includes "management" or "consulting" fees paid to Minicozzi or his entities far exceeding the value of any services provided. In one instance, TLDG

President Rice and Executive Director Kuhla identified a $600,000 accounting discrepancy and recommended an outside audit. Minicozzi was furious, and Murdy again acted to further Minicozzi's interests, terminating Rice—a highly respected veteran of the company who had led it for 12 years—hours after receiving the request for an outside audit. Apparently recognizing how incriminating this ill-advised retaliatory termination was, and after staff and faculty complained in writing about the termination, Murdy was forced to backtrack and reinstate Rice a week later. But Murdy and Minicozzi still refused to authorize the outside audit, and the $600,000 remains unaccounted for.

38.     Minicozzi's reign of impunity is possible only through the collusive support of Murdy and Tyson. The three have formed an impenetrable voting bloc, with Murdy and Tyson disregarding their own fiduciary responsibilities and instead supporting Minicozzi in anything he wishes to do, regardless of the harmful consequences for TLDG and Hudson River Partners.

39.     On or about April 18, 2020, Minicozzi, Murdy, and Tyson formalized this voting bloc by executing a Voting Agreement. The Voting Agreement binds the three to all cast their votes for Minicozzi in any board election and dictates that he "shall serve as a Director or Officer until the dissolution of the Company [or] the sale of all or substantially all of its assets."

40.     Murdy and Tyson have been made aware of Minicozzi's rampant misconduct but persist in their collusive support of Minicozzi. Although they have privately agreed with Kuhla and Rice about Minicozzi's poor leadership and poor decision-making, they refuse to take any public position challenging Minicozzi's misconduct. Their obligations to the companies they serve demand otherwise, and they have provided no satisfactory explanation for their conduct, including for why they entered the Voting Agreement. On information and belief, Murdy and Tyson receive financial or other incentives from Minicozzi for their support.

41.     Minicozzi's disloyal and reckless conduct, enabled by Murdy and Tyson, has caused Plaintiff millions of dollars in damages, including through usurped corporate opportunities. Without judicial intervention, the companies are unlikely to survive Defendants' plundering. Plaintiff comes to this Court to put an end to Defendants' shameless self-enrichment and to protect the legacies of Fred Malek and West Point.

## DERIVATIVE ALLEGATIONS (HUDSON RIVER PARTNERS)

42.     Trustee brings this action not only directly, but also derivatively in the right and for the benefit of Hudson River Partners to redress injuries suffered, and to be suffered, by Hudson River Partners as a result of Defendants' misconduct.

43.     Trustee is a stockholder of Hudson River Partners and was a stockholder of Hudson River Partners at the time of the wrongdoing alleged herein and has been a stockholder of Hudson River Partners continuously since that time.

44.     Prosecution of this action is in the best interests of Hudson River Partners.

45.     Plaintiff will adequately and fairly represent the interests of Hudson River Partners and its stockholders in enforcing and prosecuting its rights.

46.     Defendants' wrongful acts pose continuing harm to Hudson River Partners because the adverse consequences of Defendants' misconduct are still in effect and ongoing.

47.     Defendants' wrongful acts were unlawfully concealed from Hudson River Partners' stockholders.

48.     Plaintiff has not made a demand on the current director Defendants to institute this action since demand is not required and in any event would be a futile and useless act because the current director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

49.     A majority of the board is incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this

14

action. The board of Hudson River Partners consists of five individuals, including Minicozzi, Murdy, and Tyson, who together constitute a majority of the board.

50.     Minicozzi cannot disinterestedly and independently consider a demand. Minicozzi exerts practical control over the company and has extracted lucrative compensation from it.

51.     Murdy and Tyson cannot disinterestedly and independently consider a demand because they lack independence from Minicozzi. On information and belief, Murdy and Tyson receive compensation, financial or otherwise, for their ongoing collusive support of Minicozzi.

52.     A majority of the current director Defendants face a sufficiently substantial likelihood of liability that there is reasonable doubt as to a majority of the board's disinterestedness in deciding whether pursuing legal action would be in the company's best interest. Accordingly, demand upon the current director Defendants is futile.

## DERIVATIVE ALLEGATIONS (TLDG)

53.     Trustees bring this action not only directly, but also derivatively in the right and for the benefit of TLDG, a Texas closely held corporation, to redress injuries suffered, and to be suffered, by TLDG as a result of Defendants' misconduct.

54.     The derivative actions asserted herein are authorized by the Texas Business Organizations Code, and Trustees have standing to bring derivative claims

on behalf of TLDG because the Malek Trust through its trustees is, and at all times relevant to this lawsuit has been, a stockholder of TLDG.

55.     Pursuant to Texas Business Organization Code Section 21.563, a derivative action brought by a stockholder of a closely held corporation may be treated by the court as a direct action brought by the stockholder for the stockholder's own benefit if justice requires.

56.     No demand on TLDG or its board of directors is required because of TLDG's closely held status and because part of the relief requested is for the benefit of the corporation. *See* Tex. Bus. Comm. Code Ann. § 21.563(a).

## CAUSES OF ACTION

### COUNT I: BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

57.     Plaintiff repeats and realleges each allegation above as if set forth fully herein.

58.     Defendants Minicozzi, Murdy, and Tyson have fiduciary duties as board members of Hudson River Partners and TLDG.

59.     Defendants breached their fiduciary duties by usurping corporate opportunities, misappropriating corporate assets, directly competing against Hudson River Partners and TLDG, failing to adequately oversee the companies' operations, failing to disclose all material information, and failing to keep adequate records, among other misconduct.

60.     As a proximate result of Defendants' breaches of their fiduciary duties, Plaintiff has sustained damages.

## COUNT II: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Against Defendants Murdy and Tyson)

61.     Plaintiff repeats and realleges each allegation above as if fully set forth herein.

62.     Defendants Minicozzi, Murdy, and Tyson have fiduciary duties as board members of Hudson River Partners and TLDG.

63.     Minicozzi breached his fiduciary duties by usurping corporate opportunities, misappropriating corporate assets, directly competing against Hudson River Partners and TLDG, failing to adequately oversee the companies' operations, failing to disclose all material information, and failing to keep adequate records, among other misconduct.

64.     Murdy and Tyson knowingly participated in Minicozzi's breaches of fiduciary duty by approving his misconduct, failing to investigate Minicozzi's misconduct, failing to keep adequate records, and refusing to remove Minicozzi from his leadership positions.

65.     On information and belief, Murdy and Tyson received compensation for their participation in Minicozzi's breaches of fiduciary duties.

66.     As a proximate result of Murdy's and Tyson's knowing participation in Minicozzi's breaches of fiduciary duties, Plaintiff has sustained damages. The factfinder should also award punitive damages in light of the egregious, self-serving misconduct in which Defendants have engaged.

67.     Further, because these breaches of fiduciary duty were clear and serious, the Court should require Defendants to forfeit all salaries, bonuses, other compensation, and any other things of value received as a result of their fiduciary positions.

## COUNT III: UNJUST ENRICHMENT
### (Against All Defendants)

68.     Plaintiff repeats and realleges each allegation above as if set forth fully herein.

69.     Defendants have been enriched through their misappropriation of corporate assets and opportunities.

70.     Such enrichment is the direct and proximate result of Defendants' actions.

71.     Defendants' enrichment lacked justification.

72.     Plaintiff has suffered damages as a result of Defendants' unjust enrichment.

## COUNT IV: TORTIOUS INTERFERENCE WITH
## PROSPECTIVE BUSINESS RELATIONS
### (Against All Defendants)

73.     Plaintiff repeats and realleges each allegation above as if set forth fully herein.

74.     Hudson River Partners and TLDG had reasonable opportunities for business relations, including guests at the Thayer Hotel and corporate clients of TLDG.

75.     Defendants intentionally interfered with these prospective business relations and others by redirecting business away from Hudson River Partners and TLDG in favor of entities owned by Minicozzi.

76.     As a proximate result of Defendants' actions, Plaintiff has sustained damages.

## COUNT V: DECLARATORY JUDGMENT
### (Against All Defendants)

77.     Plaintiff repeats and realleges each allegation above as if set forth fully herein.

78.     Defendants' acts, omissions, behavior, and conduct are deleterious to the mission and business of TLDG and Hudson River Partners.

79.     Pursuant to Texas Civil Practice and Remedies Code Section 37.001, *et. seq.*, Plaintiff seeks a declaratory judgment that Defendants be deemed ineligible to continue to serve as officers or directors of TLDG or Hudson River Partners and

19

are prohibited from manifesting or representing themselves as having authority to act on behalf of TLDG or Hudson River Partners, and that Plaintiff or its designee be named to fill the board seats that were left to him by his father.

80.    Trustee, as a stockholder in TLDG and Hudson River Partners, has a real and adverse interest in this claim, and the issue is ripe for judicial determination.

81.    Pursuant to Texas Civil Practice and Remedies Code Section 37.009, the Court should award Plaintiff her cost and reasonable and necessary attorneys' fees as are equitable and just.

## COUNT VI: INJUNCTIVE RELIEF
### (Against All Defendants)

82.    Plaintiff repeats and realleges each allegation above as if set forth fully herein.

83.    The breaches of fiduciary duty, self-dealing transactions and other wrongful conduct described above have caused Plaintiff irrevocable injury for which there is no adequate remedy at law. Accordingly, Plaintiff requests that the Court enter a temporary restraining order prohibiting Defendants from continuing to engage in self-dealing transactions, continuing to compensate themselves in any fashion and promoting TLDG as an anchor tenant or substantial user of Defendants' new proposed hotel. After notice and hearing, Plaintiff requests that the Court grant

a temporary injunction to the same effect, and after final trial on the merits, Plaintiff requests that the Court enter a permanent injunction to the same effect.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

a. Judgment that Defendants breached their fiduciary duties.

b. Judgment that Murdy and Tyson aided and abetted Minicozzi's breaches of fiduciary duties.

c. Declaratory judgment that Defendants are ineligible to continue to serve as officers or directors of TLDG or Hudson River Partners and are prohibited from manifesting or representing themselves as having authority to act on behalf of TLDG or Hudson River Partners.

d. Declaratory judgment that Plaintiff or her designee be named to the boards of TLDG and Hudson River Partners.

e. Damages against Defendants for their misconduct.

f. Forfeiture of all compensation received by Defendants.

g. Punitive damages against Defendant Minicozzi for his wanton and willful misconduct.

h. Injunctive relief as requested herein.

i. Costs and disbursements of the action, including reasonable attorneys' fees, accountants', consultants' and experts' fees, costs, and expenses.

j.  Such other and further relief as the Court deems just and proper.


Dated:        January 13, 2023


SCOTT DOUGLASS & McCONNICO LLP

   /s/ *Daniel C. Bitting*
Daniel C. Bitting
Cindy Saiter
303 Colorado Street, Suite 2400
Austin, TX 78701
512 495 6300
dbitting@scottdoug.com
csaiter@scottdoug.com

CYRULNIK FATTARUSO LLP

Jason Cyrulnik (*pro hac vice* pending)
Paul Fattaruso (*pro hac vice* pending)
Michael Pomerantz (*pro hac vice* pending)
55 Broadway, Third Floor
New York, NY 10006
646 844 2466
jcyrulnik@cf-llp.com
pfattaruso@cf-llp.com
mpomerantz@cf-llp.com

*Counsel for Plaintiff*

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle Joyner on behalf of Daniel Bitting
Bar No. 02362480
mjoyner@scottdoug.com
Envelope ID: 71807672
Status as of 1/17/2023 11:41 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Abril Rivera | | arivera@scottdoug.com | 1/13/2023 8:08:51 PM | SENT |
| Cynthia L.Saiter | | csaiter@scottdoug.com | 1/13/2023 8:08:51 PM | SENT |
| Daniel CBitting | | dbitting@scottdoug.com | 1/13/2023 8:08:51 PM | SENT |
| Michelle Joyner | | mjoyner@scottdoug.com | 1/13/2023 8:08:51 PM | SENT |